Thomas L. Gambaro
Email: thom.gambaro@gmail.com
P.O. Box 14741
Portland, Oregon 97293-0741
Telephone: 503-544-0589

FILED'10 11 22 11:44USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FLIR SYSTEMS, INC.**, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>**THOMAS L. GAMBARO**, an individual; and **MOTIONLESS KEYBOARD COMPANY**, an Oregon corporation<br><br>Defendants. | Case No. CV 10-0231-BR<br><br>**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**DEFENDANT OPPOSITION TO FLIR MOTION**

The Defendant THOMAS L. GAMBARO, an individual and the founder of Motionless Keyboard Company is <u>not</u> bound to the *Motionless Keyboard Co. v. Microsoft Corp.*, No. Civ. 04-180-AA order and judgment and the reasons are contained herein. This reply may be considered a declaration of Thomas L. Gambaro under penalty of perjury that the statements made herein are accurate on information and belief.

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT**                                                                                                     **Pg 1 of 12**

## SUMMARY OF ARGUMENTS

**Arbitrary.** Not done according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic. Without fair, solid, and substantial cause; that is, without cause based upon the law, not governed by any fixed rules or standard. Ordinarily, "arbitrary" is synonymous with bad faith or failure to exercise honest judgment and an arbitrary act would be one performed without adequate determination of principle and one not found in nature of things. –Black's Law

**Arbitrary and capricious.** Characterization of a decision or action taken by an administrative agency or inferior court meaning willful and unreasonable action without consideration or in disregard of facts or without determining principle. –Black's Law

**Law.** That which is laid down, ordained, or established. A rule of method according to which phenomena or actions co-exist to follow each other. Law, in its generic sense, is a body of rules of action or conduct prescribed by controlling authority, and having binding legal force. That which must be obeyed and followed by citizens subject to sanctions or legal consequences is a law. Law is a solemn expression of the will of the supreme power of the State. –Black's Law

**Natural law** or the **law of nature** (Latin: *lex naturalis*) has been described as a law whose content is set by nature and that therefore has validity everywhere.[1] As classically used, natural law refers to the use of reason to analyze human nature and deduce binding rules of moral behavior. The phrase *natural law* is opposed to the positive law (meaning "man-made law", not "good law"; cf. posit) of a given political community, society, or nation-state, and thus can function as a standard by which to criticize that law.[2] In natural law jurisprudence, on the other hand, the content of positive law cannot be known without some reference to the natural law (or something like it). Used in this way, natural law can be invoked to criticize decisions about the statutes, but less so to criticize the law itself. Some use natural law synonymously with natural justice or natural right (Latin *ius naturale*), although most contemporary political and legal theorists separate the two.

Although natural law is often conflated with common law, the two are distinct in that natural law is a view that certain rights or values are inherent in or universally cognizable by virtue of human reason or human nature, while common law is the legal tradition whereby certain rights or values are legally cognizable by virtue of judicial recognition or articulation.[3] Natural law theories have, however, exercised a profound influence on the development of English common law,[4] and have featured greatly in the philosophies of Thomas Aquinas, Francisco Suárez, Richard Hooker, Thomas Hobbes, Hugo Grotius, Samuel von Pufendorf, John Locke, Francis Hutcheson, Jean Jacques Burlamaqui, and Emmerich de Vattel. Because of the intersection between natural law and natural rights, it has been cited as a component in United States Declaration of Independence and the Constitution of the United States. The essence of Declarationism is that the founding of the United States is based on Natural law.

**Natural-law argument** for the existence of God was especially popular in the eighteenth century as a result of the influence of Sir Isaac Newton. Observers concluded that things are the way they are because God intended them to be that way, though He operated outside of the natural law, Himself, as the law giver. As Bertrand Russell pointed out much later, many of the things we consider to be laws of nature, in fact, are human conventions. Indeed, Albert Einstein has shown that Newton's law of universal gravitation was such a convention, and though elegant and useful, one that did not describe the universe precisely. Most true laws are rather trivial, such as mathematical laws, laws of probability, and so forth, and much less impressive than those that were envisioned by Newton and his followers --*Wikipedia*

This single **arbitrary and capricious** definition summed up in the OPINION AND

ORDER of Judge Ann Aiken is cited in the FLIR Document 87-2 page 1 of 10 par. 2:

Holdings: The Court of Appeals, Rader, Circuit Court Judge held that:

(1) Term "concavity" in patent directed to ergonomic keyboard designed for hand-held use requires a bowl-like depression in the housing of the device;
(2) Accused gaming joysticks and cellular phones, which lacked a concavity in the housing and a keyboard within the cavity, did not literally infringe patent;
(3) Accused devices did not infringe, under doctrines of equivalents, patent claims directed to ergonomic keyboard designed for hand-held use; and
(4) Inventor's disclosures were not "public use" that would give rise to statutory bar; and
(5) Inventor's terminal disclaimer was not admission that later filed invention was obvious.

Affirmed in part, reversed in part, and remanded.
West Headnotes

FLIR Document 87-2 on page 2 of 10 par. 1 column 2:

Term "concavity" in patent directed to ergonomic keyboard designed for hand-held use requires a bowl-like depression in the housing of the device, which had to be within the limits or area of the housing, or formed by or part of the housing.

FLIR Document 88 on page 3 of 6 par. 9:

9. In the Prior Action, Judge Aiken construed the disputed terms of the '322 Patent claims, in particular the phrase "a concavity in said housing at said key activation position, and a thumb-associable cluster of keys forming a keyboard within said concavity…" to mean "that the concavity must be formed by a depression in the housing of the device, and that all keys comprising the keyboard must be contained entirely within the concave area and sunk below the surface of the housing, so that thumb movement occurs within the concave area."

Motionless Keyboard Co. 205 WL 1113818, at **16, 19.

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT**                                                                                                          **Pg 3 of 12**

FLIR Document 89-3 between page 4 of 23 (page 5 of the transcript) and page 5 of 23 (page 11 of the transcript) the most important part of the transcript is omitted, that is page 7 of the transcript, that is Defendant Exhibit A page 2 of 3 that contains the testimony of Judge Ann Aiken regarding her level of "ordinary skill in the art" of hand-held ergonomic keyboard devices quoted below:

"And I'd really like to just say, by way of sort of not needing much in the way of demonstrative efforts, although that will be helpful, I think, in some of the arguments, you don't need to overdo it. I probably have seen every configuration of hand-held devices between my five boys and their multitude of friends who are much more advanced in this arena that most of us. So please know that I do have some experience with these devices. All right? Sir?

The Defendant of the '322 patent may have faired better if Judge Ann Aiken had allowed her five sons to serve on a jury because they may well have

FLIR Document 89-3 on page 3 of 23 and page 4 of 23 there are two sections of underlined text that have one common element that is the restriction of demonstrational evidence in a case where the subject matter of the patent is dynamic including the physics of motion. To testify to "I have probably seen every configuration of hand-held device…" does not build credibility for being of "ordinary skill in the art" of ergonomic hand-held devices. Judge Aiken made a ruling based on incomplete facts, she was not willing to review, on a patent with subject matter she was not qualified to make.

Judge Aiken may as well have said, I know everything about football because I have sat in the stands watching many games. Perhaps this is how things are in Eugene Oregon.

"my client here, wished to demonstrate the dialing that was on these devices." Page 3-4.

"this isn't a hearing – it's going to be about argument, and I'm inclined not to need anything demonstrated." Page 4

The Defendant of the '322 patent points out that these three sections of the transcript quoted above set a tone that bring the conclusion Judge Aiken was below the "ordinary skill in the art" that is the standard one can expect from the Patent and Trademark patent examiners during the prosecution of the claims of a patent. Justice was blind in that trial. In reviewing the FLIR Exhibit 87-2 on page 7 of 10 using Saitek as the example since they filed opposition to unsealing the Protective Order it is interesting to note that the illustrations here for Saitek Devices are small and almost indistinquishable and the important details of the infringing products are very obscure. This is generally the same for all other infringing products of the other parties in the case but this brings the argument to two critical facts that are consistent throughout both proceedings:

1) **Judge Aiken made no reference anywhere in the OPINION AND ORDER of any evidence submitted by MKC through attorney James Buchal at all in any findings and MKC had no reason to believe that all of the evidence of MKC was ever reviewed at all.**

2) **At no time during both proceedings did any of the judges ruling on any of the products accused of infringement handle an actual '322 patent embodiment.**

This brings the credibility of both rulings into question as anyone "with ordinary skill in the art" of ergonomic keyboard designs would have at least some practical experience with the devices according to the '322 patent claims to be in a position to render an accurate ruling on the evidence. These two critical facts invalidate both proceedings. An example of this lack of review of the relative evidence is illustrated by including here an example of the evidence in the case that was apparently ignored completely.

In reviewing the FLIR Exhibit 87-2 on page 7 of 10 using Saitek, just below *1382 there is the large type underlined text "Lack of concavity and keys below housing" with arrows pointing to two Saitek Products small enough to obscure the actual embodiment details.

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT**                                                      **Pg 5 of 12**







EXHIBIT Z SLIDE 21





Saitek Product Image Three
Page 4 of 12

Saitek Product Image Four
Page 5 of 12

Saitek Product Image Eight
Page 10 of 12

Sx33claim 1-3_5 ChartR

Evidence of the MKC record from EXHIBIT Z SLIDE 21 and Sx33claim 1-3_5 ChartR.

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT**
                                                                    Pg 6 of 12

EXHIBIT Z SLIDE 21 shows the '322 Figure 7 and the Saitek Cyborg 3D Gold product. Sx33claim 1-3_5 ChartR contained three illustrations for the elements of the products illustrating the opposite of the findings of the Court of Appeals that ruled the Saitek products lacked the elements of "Lack of concavity and keys below housing".

<u>Saitek Product Image Three</u> defines a concavity at points 123 below plane ABC.

<u>Saitek Product Image Four</u> illustrates three keytops BCD that are part of the housing that form a concavity by their design that is ergonomic within the scope of the '322 patent.

<u>Saitek Product Image Eight</u> defines a concavity in the housing at the key actuation position with BCDE directly contradicting the "Lack of concavity and keys below housing", in this Saitek product, that was the basis of the ruling of non-infringement shown in FLIR Exhibit 87-2 on page 7 of 10 for two Saitek products, just below *1382 where the underlined text "Lack of concavity and keys below housing" is clearly misleading and violates the section of FLIR Exhibit 87-2 on page 2 of 10 below the section [4] Patents 291 under 29 l k 324.5 k Scope and Extent of Review in General. <u>Most Cited Cases:</u>

"In reviewing summary judgment rulings on patent infringement and invalidity, the Federal Court needs to determine de novo whether the evidence in the record raises any genuine disputes about material facts."

There were and are genuine disputes about material facts in these cases that has easily been illuminated in the comparison of evidence with the ruling findings on appeal. This brings the Defendant to regard the rulings in both courts to fully and completely fit the Black's Law definitions of **arbitrary and capricious** and the invalidity for both rulings. The Defendant has a clear and convincing view that these rulings and the definition of

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT**          **Pg 7 of 12**

"concavity" taken for a material fact, that was never put before a jury to determine the validity of this fact, has resulted in rulings of law that are completely invalid and the result of this is the one reason FLIR is maintaining their position of non-infringement of the '322 claims is at best at the level of reasonable doubt to rely on prevailing when the Defendant merits and Counterclaims are considered. These ruling could never bind the Defendant as they are only valid in the jurisdiction of the U.S. and the '322 patent works just fine everywhere else with or without the Judge Aiken "concavity" definition. The Defendant seriously doubts the arguments to support the rulings validity would approach the standard set out by FLIR Document 87-2 on page 2 of 10 under the section Federal Civil Procedure 170A in the section 170Ak2470.4 k. Right to Judgment as Matter of Law. Most Cited Cases:

"On a summary judgment motion, an evidentiary dispute is genuine if a jury could decide on the issue either way, and its verdict would survive a motion for judgment as a matter of law."

The validity of the Judge Aiken finding of fact on the definition of "concavity" would not survive a jury verdict on the issue even with the evidence introduced herein for Saitek.

The district court incorrectly construed the meaning of the combined Claim 1. phrases:

*A concavity in said housing at said key-actuation position, and*
*A thumb-associable cluster of keys forming a keyboard within said concavity,*
In the claim construction quoted as arbitrarily cited by the district court:

*"that the concavity must be formed by a depression in the housing of the device, and that all keys comprising the keyboard must be contained entirely within the concave area and sunk below the surface of the housing, so that the thumb movement occurs within the concave area"*

There is an earlier precedent for the '322 patent case that provides and alternate claim construction that will further call into question the Judge Aiken definition of "concavity". This in found in Interference Number 104,073 that is cited herein as a reference.

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND**
**JUDGMENT**                                                                                                                                              **Pg 8 of 12**

Defendant Exhibit B was filed previously as PEC Exhibit 03 and Defendant Exhibit B is the first section of the Interference Number 104,073 ruling introduced here to review the Judge Aiken claim construction to illuminate a further invalidity.

Defendant Exhibit B on page 5 of 6 a guideline is provided to review the Judge Aiken definition of "concavity" that is quoted below from paragraph 4:

"Accordingly, Goddard appears to argue that the capability of entering information into an electronic system cannot be proven. Yet we are not persuaded that functional features exist only in the abstract and thus are incapable of being proven. A completed device can be activated, operated, and then observed to determine if the claimed functional features are performed. For example, a switch must switch; a transmitter must transmit; a light bulb must light; a heater must heat. Thus, Goddard has failed to convince us that his alleged predicament is real – that functional features cannot be proven. Where the party charged with the burden of proof is incapable of proving a claim requirement, we do not eliminate the claim requirement, but rather, hold that the party has failed to meet the burden of proof."

This concept within the rules of law can be used to evaluate the Judge Aiken definition of "concavity" and this citation would indicate that a full 3D model of the "concavity" embodiment would need to be constructed and presented to the Defendant before any validity would be extended to the Judge Aiken ruling or the Judge Rader affirmation.

The Defendant quotes the U.S. Patent No. 5,332,322 Claim One to illustrate the point:

Claim 1 reads:
1. A hand-held device for entering information into an electronic system via a keyboard, the device comprising:

A housing having a grippable portion which permits the device in one hand with the thumb free to move at least temporarily to a predetermined key-actuation position while the device is being held,

A concavity in said housing at said key-actuation position, and

A thumb-associable cluster of keys forming a keyboard within said concavity, each of the plurality of keys in said cluster being selectively actuable via mixed lateral and slight endo translation of a thumb within said concavity, whereby information is entered into an electronic system.

The second section of Claim One provides the basis to evaluate the "concavity" definition. The element is that the "thumb free to move at least temporarily to a predetermined key-actuation position". The '322 Claim Two adds an element that is within the element of "the thumb free to move" and this Claim Two is quoted below:

2. A device as in claim 1 in which said keys are located in said concavity <u>within the cone of motion of the user's thumb, when the thumb is positioned in said concavity, whose apex resides adjacent to the base of the thumb.</u>

The motion of the thumb is the key element to evaluate the Judge Aiken definition of "concavity". The element "thumb free to move" is embodied again in the Claim Two element of movement "within the cone of motion of the user's thumb". These two elements operate identically in defining how the thumb can move to operate the hand-held device.

The condition of the thumb is therefore capable of movements in the 3D world in the X, Y, and Z axis "when the thumb is positioned in said concavity" is one condition of how the user's thumb can move. One position is the thumb "positioned in said concavity" and the second condition is the thumb "positioned outside said concavity". These two conditions are consistent with the motion of the thumb in the X, Y, and Z axis. The Judge Aiken limitation is included again to clarify the point.

FLIR Document 88 on page 3 of 6 par. 9:

9. In the Prior Action, Judge Aiken construed the disputed terms of the '322 Patent claims, in particular the phrase "a concavity in said housing at said key activation position, and a thumb-associable cluster of keys forming a keyboard within said concavity…" to mean <u>"that the concavity must be formed by a depression in the housing of the device, and that all keys comprising the keyboard must be contained entirely within the concave area and sunk below the surface of the housing, so that thumb movement occurs within the concave area."</u>

Motionless Keyboard Co. 205 WL 1113818, at **16, 19.

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND**
**JUDGMENT**

## CONCLUSION

The Judge Aiken claim construction imposes the requirement that the thumb is restricted to operate only "so the thumb movement occurs within the concave area" and this eliminates the second condition of thumb movement that is "so thumb movement occurs outside the concave area". The Judge Aiken claim construction restricts the '322 patent to function with thumb movements that are restricted to the X, and Y axis only "so the thumb movement occurs within the concave area". This effectively reduces the '322 patent to be a non-functioning invention, when the X, Y, and Z axis thumb movement is prevented. Data entry "whereby information is entered into an electronic system" is not possible with the Judge Aiken claim construction. This nonsequitur ruling of **Law** exists within the realm of **Law,** however the '322 patent operates within the **Natural law** or the **law of nature that is outside of the realm of the ruling of law and therefore the '322 previous rulings do not apply or bind the Defendant, Inventor Thomas L. Gambaro.**

Respectfully submitted,

November 22, 2010    By: _____
Thomas L. Gambaro
P.O. Box 14741
Portland, Oregon 97293-0741
Telephone: 503-544-0589
Email: thom.gambaro@gmail.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on November 22, 2010, a true copy of the foregoing **DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT** was served to the following counsel by hand delivery, and/or electronic filing via email with electronic signature.

**James L. Buchal**, OSB 921618
jlbuchal@mbllp.com
**Murphy & Buchal LLP**
2000 SW First Avenue, Suite 420
Portland, OR 97201
Tel: 503-227-1011x3
Fax: 503-227-1034      Attorney for Defendant Motionless Keyboard Company

**Susan D. Marmaduke**, OSB 841458
susan.marmaduke@harrang.com
**Sivhwa Go**, OSB 033252
hwa.go@harrang.com
HARRANG LONG GARY RUDNICK P.C.
1001 SW FIFTH AVENUE, 16TH FLOOR
PORTLAND, OREGON 97204
Telephone: 503-242-0000
Facsimile: 503-241-1458

**William A. Brewer III**, *Admitted Pro Hac Vice*
wab@bickelbrewer.com
**Michael J. Collins**, *Admitted Pro Hac Vice*
mjc@bickelbrewer.com
**Farooq A. Tayab**, *Admitted Pro Hac Vice*
fat@bickelbrewer.com
BICKEL & BREWER
4800 Commercial Bank Tower
1717 Main Street
Dallas, TX 75201-4612
Telephone: 214-653-4000
Fax: 214-653-1015      Attorneys for Plaintiff FLIR Systems, Inc.

Respectfully submitted,

November 22, 2010  By: _____
Thomas L. Gambaro
P.O. Box 14741
Portland, Oregon 97293-0741
Telephone: 503-544-0589
Email: thom.gambaro@gmail.com

**DEFENDANT OPPOSITION TO FLIR MOTION TO BIND ORDER AND JUDGMENT**      Pg 12 of 12