IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


FLIR SYSTEMS, INC.,                          3:10-CV-231-BR

       Plaintiff,

                                        OPINION AND ORDER

v.

MOTIONLESS KEYBOARD COMPANY,
an Oregon corporation, and
THOMAS L. GAMBARO, an
individual,

       Defendants.


FAROOQ A. TAYAB
MICHAEL J. COLLINS
WILLIAM A. BREWER, III
Bickel and Brewer
4800 Comerica Bank Tower
1717 Main Street
Dallas, TX 75201
(214) 653-4000


SUSAN D. MARMADUKE
SIVHWA GO
Harrang Long Gary Rudnick, PC
1001 S.W. Fifth Avenue, Suite 1650
Portland, OR 97204-1116
(503) 242-0000

       Attorneys for Plaintiff


1   -   OPINION AND ORDER

**THOMAS L. GAMBARO**
P.O. Box 14741
Portland, OR 97293
(503) 544-0589

      Defendant, *Pro Se*

**BROWN, Judge.**

      This matter comes before the Court on Plaintiff Flir Systems, Inc.'s Motion (#191) for Default Judgment against Defendant Thomas L. Gambaro and on the Court's Supplemental Order (#194) to Show Cause.  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion, **STRIKES** Defendant Gambaro's Answer (#11) and other pleadings, and hereby enters an Order of Default against Defendant Gambaro.


<u>**BACKGROUND**</u>

**I.  Procedural History.**

      On September 7, 2010, the Court stayed discovery in this matter pending the resolution of several motions, including Plaintiff's Motion (#86) for Partial Summary Judgment concerning the preclusive effect of rulings made by Chief Judge Ann Aiken in related litigation.  After the Court issued its Opinion and Order (#129) on April 18, 2011, in which the Court, *inter alia*, granted Plaintiff's Motion (#86) for Partial Summary Judgment and precluded Defendant from relitigating certain claim-construction rulings made by Chief Judge Aiken, the Court permitted discovery

2  -   OPINION AND ORDER

to proceed as set out in its Order (#133) issued on May 23, 2011.

On June 27, 2010, Plaintiff filed a Motion (#160) for Protective Order to address sensitive proprietary information to be disclosed during discovery.  While Plaintiff's Motion for Protective Order was under advisement and because of Defendant's routine violations of Court Orders, the Court concluded Defendant should be required to show cause why the Court should not require him to post a bond as security against violation of any protective order the Court might issue.  Accordingly, on August 1, 2011, the Court issued an Order (#173) for Defendant to Show Cause and set a hearing on August 19, 2011.

On August 11, 2011, Defendant filed numerous unauthorized documents including his Motion (#180) to Bar Aiken Rulings from This Case, which rulings the Court had repeatedly instructed Defendant that he could not challenge in this action.  In light of Defendant's repeated violations of the Court's Orders, Plaintiff filed its Motion (#191) for Default Judgment against Defendant  on August 15, 2011, as a sanction for vexatious and abusive litigation practices.  On August 16, 2011, the Court issued a Supplemental Order (#194) to Show Cause requiring Defendant to show cause why the Court should not find him in violation of numerous Court Orders and why the Court "should not strike all of Defendant's pleadings, find him in default, and enter judgment in favor of Plaintiff Flir."

At the hearing on August 19, 2011, the Court heard argument on both Show Cause Orders and Plaintiff's Motion for Default Judgment.  As set out in its Order (#198) issued on August 19, 2011, the Court permitted Defendant to file a Response to Plaintiff's Motion and to the Court's Supplemental Order to Show Cause, stayed all discovery, and deferred resolution of all other pending motions while the Court considered Plaintiff's Motion and resolved the Supplemental Order to Show Cause.

On September 1, 2011, Defendant filed his Motion (#200) for Rule 17D(3) Dismissal of Sanctions and a Declaration (#201) in support.  In its Order (#212) issued on September 15, 2011, the Court construed that Motion as a Response to the Court's Supplemental Order to Show Cause.

On September 1, 2011, as permitted by the Court, Defendant also filed his Response (#202) to Flir's Motion for Default Judgment and his Declaration (#206).  On September 12, 2011, Plaintiff filed its Reply (#207) and a Declaration (#208) in support.  Each of these filings were expressly permitted by the Court in its Order (#198) and at the hearing on August 19, 2011. On September 13, 2011, however, Defendant filed without leave of Court a responsive pleading (#209) to Flir's Reply and his Declaration (#210) in support.  In its Order (#212) issued on September 15, 2011, the Court, nevertheless, allowed these unauthorized filings.

## II.  Factual Background.

In its Opinion and Order (#129) issued on April 18, 2011, the Court set out the general factual background for this matter and need not repeat that history here.

The facts relevant to the Court's resolution of Plaintiff's Motion (#191) for Default Judgment and the Court's Supplemental Order (#194) to Show Cause concern Defendant's violations of Court Orders and Rules as follows.

### A.   Violations of Court Orders Relating to Claim Construction in the Prior Action.

In the Exhibits to his original Complaint (#1) filed on March 1, 2010, Defendant included letters that he wrote to Plaintiff in which he challenged certain claim-construction rulings made by Chief Judge Ann Aiken (Aiken Construction) in a previous action in which Defendant was involved and in which he also challenged Chief Judge Aiken's judicial integrity.  In the prior action, Chief Judge Aiken construed the terms of the '322 Patent at issue in this matter.  *See Motionless Keyboard Co. v. Microsoft*, No. 04-CV-180-AA, 2005 WL 1113818, at *13-20 (D. Or. May 6, 2005).  Chief Judge Aiken's claim construction was upheld on appeal to the United States Federal Circuit Court of Appeals.  *Motionless Keyboard Co. v. Microsoft*, 486 F.3d 1376, 1380-82 (Fed. Cir. 2007).

Defendant raised these same challenges again at the hearing before the Court on June 23, 2010 (#52), at which time the Court

5   -   OPINION AND ORDER

extensively instructed Defendant that the claim constructions by

Chief Judge Aiken are unassailable in these proceedings because

they were fully litigated in this Court and upheld on appeal to

the Federal Circuit.  The Court directed Defendant not to raise

any additional challenges to those rulings.

On March 25, 2011, the Court issued an Order (#126) in which

the Court noted numerous violations of the Court's Orders by

Defendant:

> To the extent Gambaro seeks in his Motion
> (#124) to challenge the rulings by Chief
> Judge Ann Aiken in the matter of *Motionless
> Keyboard v. Microsoft*, 04-CV180-AA., the
> Court also DENIES Motion (#124) because
> Plaintiff's pending Motion (#86) for Partial
> Summary Judgment will resolve whether Judge
> Aiken's rulings in the Motionless Keyboard
> matter are binding as to Gambaro in this
> matter.
>
> The Court has repeatedly ordered Gambaro
> (#96, #97, #98, #104, #105, #106) not to file
> any additional motions until the Court
> resolves the motions that are currently
> pending.  In its Order (#106) the Court
> warned Gambaro:  "If Gambaro refuses to
> comply with the Court's orders in the future,
> the Court will consider imposing sanctions on
> Defendant as a condition of being permitted
> to defend himself further in this matter."
> The Court hereby issues its final warning to
> Gambaro.  Any further violations of this
> Court's orders, including its case-management
> orders, will be sanctioned to include the
> possibility of striking Gambaro's Answer and
> permitting Plaintiff Flir to proceed to a
> judgment in this matter without Gambaro's
> participation.

Four days after the Court issued the above Order, Defendant

wrote a letter dated March 29, 2011, in which he again directly

and in detail challenged the Aiken Construction as "invalid" and

attacked this Court's ruling on summary judgment.  In addition,

Defendant once again impugned the integrity of Chief Judge Aiken

and questioned her legal prowess.  Finally, in response to the

Court's warning that it would not tolerate further violations of

its Orders, Defendant stated:

> The Defendant Pro Se does not consider the
> statement of the Court to be a "final
> warning" but more accurately a threat of
> tyranny to the Constitutionally assured
> rights of a natural born citizen of the
> United States.  The Defendant Pro Se is
> outraged that these measures were even
> considered to the point of including them in
> an order.  DO NOT THREATEN ME AGAIN IN
> WRITING.  I do not take kindly to threats in
> any form.
>
>                * * *
>
> In conclusion the statement: "**striking
> Gambaro's Answer and permitting Plaintiff
> Flir to proceed to a judgment in this matter
> without Gambaro's participation**."  Is
> considered by the Defendant Pro Se as an
> atrocity to the judicial system to even
> suggest such a thing.  This statement is
> viewed as an act of Judicial Terrorism?
>
> This is however proving to be a very
> educational exercise.  The Court may order
> that Gambaro is bound by the Aiken ruling,
> but Gambaro will never agree to the Aiken
> ruling based on the above three arguments.
> The Aiken ruling is FRAUD pure and simple.

Emphasis in original.

As noted, on the same day the Court received Defendant's

letter of March 29, 2011, the Court issued an Opinion and Order
(#129) granting Plaintiff's Motion for Partial Summary Judgment
and finding Defendant is bound by and cannot further challenge
the Aiken Construction from the prior action.

On June 1, 2011, less than six weeks later, Defendant filed
his unauthorized Motion (#139) for Partial Summary Judgment that
Aiken Ruling Does Not Apply in this Case.  On June 3, 2011, the
Court issued the following Order (#142):

> The Court DENIES this Motion because it is
> explicitly foreclosed by the Court's Opinion
> and Order dated April 18, 2011 (#129) in
> which the Court granted Flir's Motion for
> Partial Summary Judgment and ordered that
> "Gambaro and MKC are precluded from
> relitigating" Chief Judge Aiken's
> constructions in this matter.  Accordingly,
> Plaintiff FLIR need not respond to this
> Motion.  Moreover, the Court orders Defendant
> Gambaro not to file any other pleading,
> motion, or other paper in which he attempts
> to raise again his objections to this Court's
> conclusion that Chief Judge Aiken's previous
> claim constructions may not be relitigated in
> this action or otherwise attempts to litigate
> their correctness.  Gambaro's objections are
> duly noted in the record and may be raised on
> appeal after this case is concluded at the
> trial level.  The Court has previously warned
> Gambaro that he will be sanctioned if he does
> not comply with the Court's case-management
> orders.  Accordingly, if Gambaro violates
> this order, the Court will sanction him and
> will consider striking all of his pleadings
> and precluding him from defending FLIR's
> claims against him.

On July 8, 2011, approximately one month later, Defendant
filed his Video Declaration (#167) in Support of Defendant Pro Se

Exhibit 03 to Reverse Ruling in which he provided additional argument as to the purported errors in the Aiken Construction and sought its reversal.  Defendant also filed his Video Declaration in case number 04-CV-180-AA in support of a motion for reconsideration, which Chief Judge Aiken denied on July 6, 2011. On July 13, 2011, the Court issued an Order (#168) noting the Defendant's repeated violation of the Court's Orders, striking Defendant's Video Declaration, and repeating the Court's warning of sanctions to possibly include striking Defendant's pleadings and preventing Defendant from defending Plaintiff's claims.

On July 15, 2011, two days later, Defendant filed his Pro Se Progress Report (#170) with You Tube Video Evidence Added as Courtesy in which Defendant again challenged the validity of the Aiken Construction and alleged various violations of evidence rules at the Markman hearing in prior action.

On August 1, 2011, the Court issued Orders (#172, #173) in which the Court expressed its serious concern that, in light of Defendant's unwillingness to follow Court Orders, Defendant would not comply with any protective order the Court might issue. Accordingly, the Court ordered Defendant to show cause why the Court should not impose a bond as security against any such violations.

Ten days later, Defendant filed his unauthorized Motion (#180) to Bar Aiken Rulings From This Case and his Declaration

(#183) in support in which he asserted at length that the allegedly erroneous Aiken Construction was the result of conflicts of interest and Chief Judge Aiken's lack of integrity and technical legal prowess.

On August 16, 2011, in response to Defendant's "clear violation of the Court's previous Orders, including docket entries #126, #129, #142, #168, and #172, and the Court's instructions to Defendant on the record on June 23, 2010 (#52)," the Court issued a Supplemental Order (#194) to Show Cause why, "in light of his Motion (#180) . . . , the Court should not find him in violation of these Orders (#126, #129, #142, #168, #172), and, as a sanction, why the Court should not strike all of Defendant's pleadings, find him in default, and enter judgment in favor of Plaintiff Flir."

Finally, facing two Show Cause Orders for his repeated violations of Court Orders, Defendant filed his Motion (#196) to Only Allow USCAFC Rulings in this Case in which Defendant again attempts to revisit and narrow the Court's ruling on summary judgment and to apply a "more accurate" claim construction than the one applied by Chief Judge Aiken.

**B.   Violations of Other Court Orders.**

In addition to the violations set out above relating to the Aiken Construction and the Court's ruling on summary judgment, Defendant has violated numerous other Court Orders, which the

Court does not need to enumerate here because those violations
are already reflected on the record.  For example:  (1) Defendant
has made numerous unauthorized filings in the face of repeated
Court Orders directing him to not file additional motions while
the Court was considering several pending motions (*see, e.g.,*
Docket #52, #96, #99, #100, #101, #104, #105, #106, #123, #124,
#126); (2) Defendant has repeatedly failed to confer and to
communicate with opposing counsel and to certify same in his
motions as required by Local Rule 7-1 (*see, e.g.,* Docket #56,
#93, #95, #96, #98, #99, #104, #105, #148, #196); and (3)
Defendant has violated discovery rules (*see* Docket #172).


## STANDARDS

There is "strong precedent establishing the inherent power
of federal courts to regulate the activities of abusive litigants
by imposing carefully tailored restrictions under the appropriate
circumstances."  *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir.
1989).  Moreover,

> "[f]lagrant abuse of the judicial process
> cannot be tolerated because it enables one
> person to preempt the use of judicial time
> that properly could be used to consider the
> meritorious claims of other litigants."  *De
> Long*, 912 F.2d at 1148; *see O'Loughlin v.
> Doe*, 920 F.2d 614, 618 (9th Cir. 1990).
> Thus, in *De Long*, we outlined four factors
> for district courts to examine before
> entering pre-filing orders.  First, the
> litigant must be given notice and a chance to
> be heard before the order is entered.  *De*

11  -  OPINION AND ORDER

> *Long*, 912 F.2d at 1147.  Second, the district
> court must compile "an adequate record for
> review." *Id.* at 1148.  Third, the district
> court must make substantive findings about
> the frivolous or harassing nature of the
> plaintiff's litigation.  *Id.*  Finally, the
> vexatious litigant order "must be narrowly
> tailored to closely fit the specific vice
> encountered."  *Id.*

*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir.

2007).  When encountering vexatious litigants, the Ninth Circuit

has held appropriate sanctions

> may include not only a pre-filing order, but
> also monetary sanctions or even the ultimate
> sanction of dismissal of claims. We do not
> here hold that, if a court encounters
> vexatious litigation, a pre-filing order is
> the only permissible form of sanction.
> Rather, the district court may exercise its
> sound discretion under the facts presented to
> choose any appropriate sanction that will
> punish the past misconduct and prevent the
> future misconduct of the lawyer or party at
> issue.

*Id.* at 1065 n.8.  In addition, "[c]ourts have inherent equitable

powers to dismiss actions or enter default judgments for failure

to prosecute, contempt of court, or abusive litigation

practices." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

916 (9th Cir. 1987)(citing *Roadway Express, Inc. v. Piper*, 447

U.S. 752, 764 (1980); *Link v. Wabash R.R.*, 370 U.S. 626, 632

(1962); and *United States v. Moss-American, Inc.*, 78 F.R.D. 214,

216 (E.D. Wis. 1978)).  The court has "broad discretion in

fashioning sanctions." *Molski*, 500 F.3d at 1065 n.8 (citing *Leon*

*v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006), and *Ritchie*

12  -   OPINION AND ORDER

*v. United States*, 451 F.3d 1019, 1026 (9th Cir. 2006)).


## DISCUSSION

**I.    Plaintiff's Motion for Default Judgment.**

Plaintiff contends the Court is within its discretion to impose the ultimate sanction against Defendant because he has repeatedly demonstrated his willful contempt and lack of respect for the rulings of this Court, Chief Judge Aiken, and the Federal Circuit.  Plaintiff also points out that, in addition to its inherent powers, the Federal Rules of Civil Procedure expressly provide the Court with the authority to sanction vexatious or disobedient litigants.  *See, e.g.,* Fed. R. Civ. P. 11, 16, 37, and 41.  Plaintiff also notes the Ninth Circuit has set out a five-factor balancing test for determining whether default judgment is an appropriate sanction against a disobedient party:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).

*See also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  "[W]e will overturn a dismissal sanction only if we have a definite and firm conviction that it was clearly outside the acceptable range of sanctions." *Malone*, 833 F.2d at 130.

13  -  OPINION AND ORDER

In Defendant's opposition to Plaintiff's Motion, he fails to explicitly address the Motion or the *Malone* factors set out in Plaintiff's Memorandum.  Instead Defendant accuses Plaintiff of failing to confer in accordance with Local Rule 7-1, of making misrepresentations to the Court, and of committing fraud. Unsurprisingly, Defendant continues to maintain in his Response and his Declaration in support that the Aiken Construction is erroneous and "is soon to be overturned."

Defendant's allegations of intentional misrepresentation by Plaintiff are unsubstantiated.  Furthermore, Defendant's contention that Plaintiff failed to confer in accordance with Local Rule 7-1 rings hollow.  Plaintiff notes in its Reply that Defendant cut off in-person communications with Plaintiff in favor of exclusive email communication due to numerous disagreements between the parties.  Plaintiff notified Defendant in advance by email of its intent to file the present Motion, but Defendant admitted he did not read it because Plaintiff's previous status report was, according to Defendant, "very inaccurate." *See* Docket #205.  The Court finds on this record that Plaintiff's conferral efforts were sufficient in light of the extreme lack of communication by Defendant throughout this matter and concludes that any additional conferral would have been a useless gesture.  In any event, even if Plaintiff had inadvertently failed to confer, the Court would suspend the

application of that Rule on this particular Motion in accordance
with its authority under Local Rule 1-4 in light of Defendant's
behavior to date.

Accordingly, the Court turns to an analysis of the *Malone*
factors.

**A.    Public Interest in Expeditious Resolution of
Litigation.**

Defendant's repeated violation of the Court's Orders has
forced the parties into a long and costly dispute that even now,
over 18 months after the Complaint was filed, has not progressed
through discovery.  Defendant's filing of numerous unauthorized
and frivolous filings have forced the Court to stay discovery,
has led to additional unnecessary hearings, and has left the case
far from being resolved.

In addition, it appears from the letters Defendant wrote to
Plaintiff that it is part of Defendant's strategy to make this
matter costly for Plaintiff.  For example, as Plaintiff notes in
its Memorandum in support of its Motion for Default Judgment,
Defendant stated in his letter to Plaintiff dated February 14,
2010 (attached to his Complaint (#11), Exhibit J):

> FLIR has considerable revenues from military
> contracts so let me leave you with some
> perspective on continued denial of the facts
> in this case.  I will mention that I have
> military training and experience from 5/69 to
> 11/70 and this training and experience is
> with the U.S. Army in Artillery.  You may
> consider that I am now **"An Army Of One"**.

15  -   OPINION AND ORDER

> Artillery causes damage to an enemy from a
> distance.  **Does FLIR and the Board of
> Directors want to be at war with "An Army Of
> One"?**  It would be possible to cause millions
> of dollars of damage to FLIR without leaving
> my home and without filing a case in Federal
> Court where 85% of jury trials find in favor
> of the independent inventor(s).

Emphasis in original.

Defendant repeated similar threats in his letter to

Plaintiff dated March 10, 2010(attached to his Amended Complaint

(#15), Exhibit K) in which he pressed his $750,000 settlement

demand:

> From this moment forward until
> settlement you should all be advised you have
> started a war and that FLIR and the above
> named firms are all now subject to financial
> attack that may be indirectly felt.  The
> business as usual of patent infringements and
> disregard for the laws of the land, whereby
> FLIR pretends to support the government and
> military with contracts, while FLIR products
> violate patent laws, will not be tolerated
> further.
>
> I estimate that I may cause more damage
> to FLIR than the sales of infringing products
> and more damage to each of the firms named
> than the sum total of the hours billed. You
> have been forewarned.

Based on the overall conduct of Defendant in this matter,

the Court concludes Defendant does not have any interest in

seeing this matter resolved on the merits, but instead intends to

protract this matter as long as possible with the hope of forcing

some sort of settlement with Plaintiff.

The Court concludes on this record that this factor heavily

16  -  OPINION AND ORDER

favors the sanction of a default against Defendant.

**B.   Court's Need to Manage its Docket.**

Similar to the first factor, Defendant's conduct has made the Court's task of managing its docket very difficult.  The Court has had to monitor each of Defendant's filings closely, to determine which are frivolous and which are legitimate, and to attempt to minimize the burden on Plaintiff by addressing Defendant's filings immediately, often without a response from Plaintiff and ahead of other pressing Court matters.  Thus, the Court has wasted a significant amount of time in its attempts to address Defendant's unprofessional and willfully disobedient conduct.

The Court concludes on this record that this factor also favors the sanction of a default against Defendant.

**C.   Risk of Prejudice to Plaintiff.**

"In determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131.

Plaintiff has already been prejudiced by the added time and cost in this matter resulting from Defendant's repeated refusal to comply with this Court's Orders.  The Court has made every attempt to minimize that prejudice by frequently not requiring responses and striking or summarily denying frivolous motions,

17  -   OPINION AND ORDER

but Defendant's actions have continually impaired Plaintiff's ability to obtain a lawful resolution of this dispute.  The Court does not find any basis to conclude that Defendant will stop making frivolous filings or end his willful violations of Court Orders.

Indeed, the Court has been so concerned that Defendant will use sensitive information gained through the discovery process to the detriment of Plaintiff, the Court has determined discovery should not proceed in this matter without a substantial bond from Defendant.  The Court has also expressed its doubts that Defendant has complied with his own discovery obligations (*see* Docket #172), which also creates a high risk of prejudice to Plaintiff in its effort to reach a fair resolution of this matter.

The Court concludes on this record that this factor weighs in favor of the sanction of a default against Defendant.

**D.    Public Policy Favoring Disposition on the Merits**.

This factor always weighs against a default.  *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011).  Accordingly, the Court weighs the other factors in light of the policy favoring a resolution on the merits.

**E.    Availability of Less Drastic Sanctions**.

The Court has made every attempt to find an effective way to ensure Defendant adheres to Court Orders and Rules and cooperates

18  -   OPINION AND ORDER

with Plaintiff and the Court in seeking a final resolution on the merits.  The Court has given Defendant verbal instruction, has limited Defendant's filings, has struck frivolous or unauthorized documents, has held a show-cause hearing, and has made repeated and explicit warnings of the consequences of violating Court Orders and Rules.  None of these measures has yet to garner Defendant's compliance.  In short, the Court is now convinced that there are not any less-drastic measures the Court can take that will accomplish the goal of resolving this matter on the merits in an orderly fashion.

Accordingly, the Court concludes the *Malone* factors clearly support the Court's exercise of its discretion to strike Defendant's pleadings and to enter an order of default against Defendant as a sanction for his repeated willful disobedience of Court Orders.

**II.  Court's Supplemental Order to Show Cause.**

As noted, the Court also ordered Defendant to show cause why "in light of his Motion (#180) . . . , the Court should not find him in violation of these Orders (#126, #129, #142, #168, #172), and, as a sanction, why the Court should not strike all of Defendant's pleadings, find him in default, and enter judgment in favor of Plaintiff Flir."

At the show-cause hearing on August 19, 2011, Defendant expressed his desire to make a supplemental showing, which the

19  -   OPINION AND ORDER

Court granted.  Defendant also maintained he would abide by the

Court's rulings if given an additional opportunity to do so.

In his Response (#200) to the Court's Supplemental Order,

Defendant purports to quote the following from a "Rule 17D(3)":

. . . Notwithstanding any other provision of
this section, the court may not impose
sanctions against a party if, within 21 days
after the motion is served on the party, the
party amends or otherwise withdraws the
pleading, motion, document or argument in a
manner that corrects the false certification
specified in the motion.

It appears Defendant intends to cite Federal Rule of Civil

Procedure 11(C)(2), which provides:

A motion for sanctions must be made
separately from any other motion and must
describe the specific conduct that allegedly
violates Rule 11(b).  The motion must be
served under Rule 5, but it must not be filed
or be presented to the court if the
challenged paper, claim, defense, contention,
or denial is withdrawn or appropriately
corrected within 21 days after service or
within another time the court sets.  If
warranted, the court may award to the
prevailing party the reasonable expenses,
including attorney's fees, incurred for the
motion.

Rule 11(c)(2), however, does not govern the Court's

authority to sanction a disobedient party or a vexatious

litigant, and the sanction the Court is presently considering is

not based on a violation of Rule 11(b).

On the basis of the purported Rule 17D(3), Defendant

contends the Court should permit him to withdraw or should strike

20   -   OPINION AND ORDER

the offending documents and, as a result, could not sanction
Defendant.

Finally, in his Declaration (#201), Defendant maintains his
violations should be excused because he is not an attorney and
does not have access to Pacer.  Defendant otherwise repeats his
allegations of impropriety by Plaintiff and states:  "[B]ased on
un-inspected evidence from the previous case that the other part
of the Chief Judge Aiken rulings should not have been upheld."

The Court is utterly unconvinced by Defendant's statements
that he will abide by the Court's Orders and that somehow his *pro
se* status excuses his behavior.  The Court has sent its Orders to
Defendant via United States Mail and, in most cases, has also
emailed its Orders to Defendant for his convenience.  Thus, the
suggestion that Defendant's behavior is somehow a result of his
lack of access to the Court's rulings or his inability to
understand what the Court ordered him to do is completely without
foundation.[1]

Ultimately Defendant has not offered, and the Court cannot
discern, any reasonable excuse for Defendant's repeated

---

[1] A poignant example of Defendant's willful disobedience of
the Court's Orders relates to the Court's Order (#126) issued on
March 25, 2011, in which the Court repeated its warning of the
ultimate sanction for continued violation of the Court's Orders
to refrain, *inter alia*, from his attacks on the Aiken
Construction.  Four days later, Defendant quoted the Court's
warning in Docket #126, stated he would not be threatened, and
challenged the Aiken Construction in any event.

21  -  OPINION AND ORDER

violations of the Court's explicit Orders.  Defendant has shown
an obvious contempt for Plaintiff, for this Court, and for the
judicial process that has significantly wasted the time of the
Court and of Plaintiff.  The Court is convinced this behavior
will not abate, and, therefore, in the exercise of its
discretion, the Court strikes Defendant's pleadings and hereby
enters an Order of Default against Defendant as a sanction for
his willful disobedience of the Court.  All remaining pending
motions, therefore, are **denied as moot**.


## CONCLUSION

For these reasons, in the exercise of its discretion, the
Court **GRANTS** Plaintiff's Motion (#191) for Default Judgment,
**STRIKES** Defendant Gambaro's Answer (#11) and other pleadings, and
enters an Order of Default against Defendant Gambaro.  Plaintiff
is **directed** to submit a proposed form of default judgment for the
Court's consideration **no later than December 1, 2011**.

IT IS SO ORDERED.

DATED this 17th day of November, 2011.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge